1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PIERRE DEVLIN,

                                    Petitioner,

        v.

RONALD OLIVER, *et al.*,

                                    Respondents.

Case No. 2:21-cv-01266-ART-DJA

ORDER

10    **I.    SUMMARY**

11        This habeas corpus action is brought by Pierre Devlin, an individual
12    incarcerated at Nevada's Southern Desert Correctional Center. Devlin is
13    represented by appointed counsel. The case is before the Court for resolution of
14    the merits of Devlin's petition. The Court will deny Devlin's petition and will deny
15    Devlin a certificate of appealability.

16    **II.    BACKGROUND**

17        In May 2016, Isalei Morel (Morel) and Livingstone Togipau (Togipau), from
18    Australia, were in Las Vegas to celebrate Togipau's birthday. Early in the morning
19    on May 29, 2016, they were walking along a street in downtown Las Vegas with
20    their cousin, Apollo Laurel, her son Clayton Laurel, and Clayton's friend Willy
21    Gomez. They encountered Devlin and Steven Burks. An argument ensued
22    between Gomez and either Devlin or Burks. Devlin went and got a handgun from
23    his car and fired a shot into the ground within view of Gomez and his group.
24    Devlin and Burks then got into Devlin's car, with Devlin driving and Burks in the
25    front passenger seat. They drove past Gomez and his group. As they passed,
26    Burks fired multiple shots from the car with a handgun, hitting four of the
27    individuals in the group. Devlin and Burks then drove away in the car.

28

On June 16, 2016, Devlin and Burks were charged by indictment with five counts of attempted murder with use of a deadly weapon, four counts of battery with use of a deadly weapon resulting in substantial bodily harm, one count of assault with a deadly weapon, and six counts of discharge of a firearm from or within a structure or vehicle. (ECF No. 31-3.)

Devlin filed a motion to sever his trial from Burks's. (ECF No. 31-9.) The court denied that motion. (ECF No. 31-15.)

The jury trial commenced on March 27, 2017, and concluded on April 6, 2017. (ECF Nos. 31-33, 31-35, 31-36, 31-37, 31-38, 31-40, 31-41, 31-44.) The jury found Devlin guilty of four counts of battery with the use of a deadly weapon resulting in substantial bodily harm, one count of assault with a deadly weapon, and six counts of discharge of a firearm from or within a structure or vehicle. (ECF No. 31-43.) The jury deadlocked on all counts of attempted murder with the use of a deadly weapon. (*Id.*) Devlin was sentenced to a total of 11 to 56 years in prison. (ECF Nos. 31-48.) The judgment of conviction was filed on June 22, 2017. (ECF No. 31-49.)

Devlin appealed. (ECF No. 32-32 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed Devlin's conviction on September 12, 2019. (ECF No. 32-40.)

Devlin filed a *pro se* petition for writ of habeas corpus in the state district court on June 4, 2020. (ECF No. 32-44.) The court denied Devlin's petition in a written order filed on September 3, 2020. (ECF No. 32-49.) Devlin appealed. (ECF No. 33-8 (Appellant's Informal Brief).) The Nevada Court of Appeals affirmed on June 7, 2021. (ECF No. 33-10.)

Devlin initiated this federal habeas corpus action, *pro se*, on July 2, 2021. (ECF Nos. 1, 7.) The Court appointed counsel for Devlin (ECF No. 9), and, with counsel, Devlin filed a first amended habeas petition on January 27, 2022 (ECF

No. 14) and a second amended habeas petition on November 8, 2022 (ECF No. 26).

Devlin's second amended petition—the operative petition—asserts the following claims for habeas corpus relief:

> Ground 1:  The trial court violated Devlin's rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution by failing to sever his trial from that of his co-defendant, Steven Burks.
>
> Ground 2:  Devlin's rights to confrontation, due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution were violated when a juror considered evidence that was not admitted into evidence at trial.
>
> Ground 3: Devlin's trial counsel was ineffective, violating his rights to counsel and due process under the Sixth and Fourteenth Amendments of the United States Constitution.
>
> > A.  Trial counsel failed to challenge juror misconduct.
> >
> > B.  Trial counsel failed to negotiate a plea bargain.
> >
> > C.  Trial counsel elicited unfavorable testimony during the cross examination of Willy Gomez.
> >
> > D.  Trial counsel failed to request severance and mistrial after Burks's closing arguments.
> >
> > E. Trial counsel failed to prepare for Devlin's testimony.
>
> Ground 4:  Devlin's appellate counsel was ineffective for failing to challenge the sufficiency of the evidence, violating his rights to counsel and due process under the Sixth and Fourteenth Amendments of the United States Constitution.

(ECF No. 26.)

Respondents filed a motion to dismiss on May 8, 2023 (ECF No. 30), arguing that Ground 1 is unexhausted in state court and/or procedurally defaulted, and is not cognizable in this federal habeas action; that Ground 2 is, in part, unexhausted in state court and/or procedurally defaulted; and that Grounds 3C, 3D and 3E are unexhausted in state court and/or procedurally defaulted. The Court granted the motion to dismiss in part and denied it in part. The Court dismissed Ground 1 and part of Ground 2. Ground 2 was dismissed

to the extent Petitioner claims violations of his federal constitutional rights to due process of law and a fair trial; the Confrontation Clause claim in Ground 2 remained. (ECF No. 41.)

Respondents filed an answer, responding to Devlin's remaining claims, on June 21, 2024. (ECF No. 47.) On September 26, 2024, Devlin filed a reply, along with a motion for evidentiary hearing. (ECF Nos. 50, 53.) On December 6, 2024, Respondents filed a response to Devlin's reply, and an opposition to Devlin's motion for evidentiary hearing. (ECF Nos. 58, 59.) And on December 13, 2024, Devlin filed a reply in support of his motion for evidentiary hearing. (ECF No. 60.)

## III.    DISCUSSION

### A.    Legal Standard for Claims Adjudicated in State Court

28 U.S.C. § 2254(d) sets forth the standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA), which is generally applicable to habeas claims adjudicated on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S.

362, 405–06 (2000)) (internal quotation marks omitted). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413) (internal quotation marks omitted). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d)(1) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet … and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted)).

## B.    Exhaustion and Procedural Default – Legal Principles

A federal court generally cannot grant a state prisoner's petition for writ of habeas corpus unless the petitioner has exhausted available state-court remedies. 28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This means that a petitioner must give the state courts a fair opportunity to act on

each of his claims before he presents the claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Byford*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981). The petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994).

The Supreme Court has recognized that in some cases it may be appropriate for a federal court to anticipate a state-law procedural bar of a claim never presented in state court, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In this case, in the ruling on the motion to dismiss, the Court determined that any claims not yet presented in state court would now be procedurally barred—for example, under Nev. Rev. Stat. § 34.726 (statute of limitations) and/or § 34.810 (successive petitions)—if Devlin were to return to state court to exhaust those claims. (ECF No. 41 at 5–6; *see also* ECF No. 26 at 12 (Devlin concedes in his second amended habeas petition, in the context of Grounds 3C, 3D and 3E, that "he cannot overcome the state procedural bars were he to raise those claims now in state court," and that "[t]he only avenue available for these claims to be heard is in this Court based on *Martinez v. Ryan*, 566 U.S. 1 (2012), which Nevada does not recognize. *See Brown v. McDaniel*, 331 P.3d 867 (Nev.

2014).”); ECF No. 30 (Respondents, in their motion to dismiss, argued, with regard to Grounds 1, 2 (in part), 3C, 3D and 3E, that "[i]f this court were to consider these unexhausted claims it would have to apply the clearly applicable independent and adequate state bars found in Nev. Rev. Stat. 34.726, Nev. Rev. Stat. 34.800, and Nev. Rev. Stat. 34.810, and dismiss these claims."); ECF No. 37 at 4–9 (Devlin, in his opposition to the motion to dismiss, argued that Grounds 3C, 3D and 3E are technically exhausted but subject to the procedural default doctrine, and that he can show cause and prejudice to excuse the procedural defaults under *Martinez*.).) Therefore, the Court ruled that the anticipatory default doctrine applies to claims Devlin has not presented in state court, and the Court considers such claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

Turning to the procedural default doctrine, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* described the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the question of

1  prejudice, the petitioner bears "the burden of showing not merely that the errors

2  [complained of] constituted a possibility of prejudice, but that they worked to his

3  actual and substantial disadvantage, infecting his entire [proceeding] with errors

4  of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989),

5  (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). In *Martinez v. Ryan*, 566

6  U.S. 1 (2012), the Supreme Court held that ineffective assistance of post-

7  conviction counsel, or lack of post-conviction counsel, may serve as cause, to

8  overcome the procedural default of a claim of ineffective assistance of trial

9  counsel.

10      **C.    Ground 2**

11      The part of Ground 2 not dismissed in the Court's ruling on Respondents'

12  motion to dismiss was a claim that his right to confrontation under the Sixth and

13  Fourteenth Amendments was violated when a juror considered evidence that was

14  not admitted into evidence. (ECF No. 26 at 11–12; ECF No. 41.) In his reply to

15  Respondents' answer, Devlin abandoned this claim. (ECF No. 50 at 2 ("Upon

16  further review, Ground 2 doesn't involve the right to confrontation. Accordingly,

17  this Reply to Answer will not address [Ground 2].").)

18      **D.    Grounds 3A and 3B**

19      In Grounds 3A and 3B, Devlin claims that his trial counsel was ineffective,

20  violating his rights to counsel and due process under the Sixth and Fourteenth

21  Amendments. (ECF No. 26 at 12–22.)

22      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court

23  established a two-prong test for claims of ineffective assistance of counsel: the

24  petitioner must demonstrate (1) that the attorney's representation "fell below an

25  objective standard of reasonableness," and (2) that the attorney's deficient

26  performance prejudiced the defendant such that "there is a reasonable

27  probability that, but for counsel's unprofessional errors, the result of the

28  proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court

considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05 ("The standards created by *Strickland* and § 2254(d) are both highly deferential ... and when the two apply in tandem, review is 'doubly' so." (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

Devlin asserted both Ground 3A and Ground 3B in his state habeas petition. (ECF No. 32-44 at 25–26, 37–38.) The state district court denied relief on both claims. (ECF No. 32-49 at 17–18, 23–24.) Devlin appealed (see ECF No. 33-8 (Appellant's Informal Brief)), and the Nevada Court of Appeals affirmed. Therefore, both claims are subject to the AEDPA standard of review. *See* Part III.A., *supra*.

### 1.    Ground 3A

In Ground 3A, Devlin claims, as follows, that his trial counsel was ineffective for failing to challenge juror misconduct:

> On March 30, 2017, Day 4 of the trial, the court stated that "a juror approached [Marshall] Kenny and told him that a bunch of the jurors had been eating lunch together yesterday and one of the jurors started discussing the body language of one of the defendants." [Footnote citing ECF No. 31-37 at 153.] Marshall Kenny informed the

court that Juror No. 14 reported, "there was six of them eating lunch together, and that one of the jurors had just commented on the body language of one of the defendants. They didn't specify which defendant it was or really what the body language was." [Footnote again citing ECF No. 31-37 at 153.]

Trial counsel was present when Marshall Kenny apprised the court of this juror misconduct, but trial counsel failed to seek a mistrial or even request a canvass of the declarant juror and the entire jury to determine the extent of the misconduct.

Trial counsel's deficient performance prejudiced Devlin. The juror's conduct constituted a consideration of evidence external to the evidentiary record for which neither codefendant could conduct effective cross examination. The trial court's limiting instruction to the jury was insufficient because the court only admonished the jury not to discuss the case, not whether to consider the external evidence.

Moreover, because trial counsel failed to request to canvass the declarant juror, the record is insufficient as to whether that juror was able to set aside the prejudice resulting from his or her observations. Not only did the comment occur midway through trial, the external evidence was likely related to guilt or innocence. And because the defendant's body language was an active and ongoing matter during trial, it is likely that the juror would continue to be influenced by such evidence.

Finally, because trial counsel failed to request to canvass the jury, the record is unclear as to the full extent of how much misconduct occurred. Juror No. 14 made the comment at lunch with an unknown number of other jurors. The record lacks any details about which members of the jury were present. By allowing the comment to stand, those jurors may have believed the jury could determine guilt or innocence based on the body language of defendants as they listened to the trial testimony, rather than the evidence actually presented at trial. Thus, Devlin suffered prejudice when at least one juror considered improper external evidence on the basis of body language.

Accordingly, trial counsel was ineffective for failing to seek a mistrial based on the juror misconduct or request further factual exploration on the issue. Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) and (2).

(ECF No. 26 at 13–14 (footnotes citing the transcript of the fourth day of trial (ECF No. 31-37, p. 153) omitted).)

On his direct appeal, Devlin asserted a related claim: that the trial court erred in not canvassing the juror that said something to other jurors about the

body language of one of the defendants. (ECF No. 32-32 at 22–25.) The Nevada

Supreme Court ruled as follows on that claim:

> … Devlin argues that juror misconduct warrants reversal. Because Devlin did not object, we review for plain error which affected his substantial rights. *See Miller v. State*, 121 Nev. 92, 99, 110 P.3d 53, 58 (2005). We conclude that Devlin did not show prejudice in the form of a "reasonable probability or likelihood that the [alleged] juror misconduct affected the verdict." *Meyer v. State*, 119 Nev. 554, 564, 80 P.3d 447, 455 (2003). We see no such effect on the verdict resulting from one juror's statements to other jurors regarding Devlin's and/or his codefendant's body language during trial, especially in light of the evidence otherwise supporting the verdict as discussed above and the district court's instructions to the jury. *See id.* at 565, 80 P.3d at 456.

(ECF No. 32-40 at 3.)

Devlin asserted a claim of ineffective assistance of counsel like Ground 3A

in his state habeas petition. (ECF No. 32-44 at 25–26.) The Nevada Court of

Appeals affirmed the denial of relief on the claim, ruling as follows:

> … Devlin claimed his trial counsel was ineffective for failing to compel the trial court to conduct an investigation into juror misconduct. During trial, a bailiff notified the trial court that a juror informed him that another juror made a comment during the lunch break concerning a defendant's body language. The trial court stated to the parties that it intended to again admonish the jurors that they were not to discuss the trial amongst themselves. Devlin's counsel indicated that he understood the trial court's decision regarding this issue. The trial court subsequently admonished the jurors not to engage in discussions regarding any matter related to Devlin's trial, and jurors are presumed to follow the court's instructions. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004).
>
> Given the trial court's decisions and actions regarding the underlying issue, Devlin did not demonstrate any failure by counsel to seek an investigation into the juror's comment fell below an objective standard of reasonableness. In addition, the Nevada Supreme Court reviewed the underlying issue on direct appeal under a plain error standard and concluded Devlin did not show a reasonable probability that juror misconduct affected the verdict. [Footnote, citing to the Nevada Supreme Court's Order of Affirmance on direct appeal, omitted.] In light of the record and the Nevada Supreme Court's review of the underlying issue, we conclude Devlin did not demonstrate a reasonable probability of a different outcome at trial had counsel sought an investigation into the juror's comment. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 33-10 at 7–8.)

The Nevada Court of Appeals' ruling was reasonable. A fairminded jurist could conclude the Nevada Supreme Court's ruling, adopted by the Nevada Court of Appeals, that Devlin did not show a reasonable probability that the alleged juror misconduct affected the verdict, was reasonable. And, if there is no reasonable probability that the alleged juror misconduct affected the verdict, counsel not challenging the alleged juror misconduct was not prejudicial under *Strickland. See Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). The Nevada Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence presented.

Devlin requests an evidentiary hearing with respect to this claim. (ECF No. 53.) The Court determines, however, that an evidentiary hearing is not warranted. "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend v. Sain*, 372 U.S. 293, 312 (1963), as modified by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). The standard for receiving an evidentiary hearing is "reasonably low." *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001). The two-step analysis, to determine whether an evidentiary hearing is warranted, is: (1) whether an evidentiary hearing is necessary to resolve disputed facts that bear on a petitioner's entitlement to relief, and (2) whether the petitioner lacked a fair chance to litigate the factual issues in state court. *Insyxiengmay v. Morgan*, 403 F.3d 657, 670–71 (9th Cir. 2005). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual

allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Devlin states in his motion for evidentiary hearing that "this court may find it necessary to hear from Devlin's counsel to determine whether they had a strategic basis for their conduct." (ECF No. 53 at 5.) However, Devlin does not describe the testimony trial counsel would provide and he does not explain how such testimony, whatever it would be, could have any bearing on the question of prejudice under *Strickland. See Totten v. Merkle*, 137 F.3d 1172, 1175–77 (9th Cir. 1998) ("There is no indication from the arguments presented that an evidentiary hearing would in any way shed new light on the question of prejudice."). Also, Devlin states that he "seeks an evidentiary hearing to hear from the jurors." (ECF No. 53 at 5.) However, here also, Devlin does not provide any description of the testimony the jurors would provide. Devlin's request for an evidentiary hearing appears to be purely speculative. Devlin makes no showing that an evidentiary hearing is necessary, that is, that he could present evidence supporting his claim. *See Insyxiengmay*, 403 F.3d at 670–71; *Schriro*, 550 U.S. at 474; *see also Clark v. McKinney*, No. 5:22-cv-01505-JFW-MAA, 2023 WL 630234 at *1 (C.D.Cal. Aug. 10, 2023) (denying evidentiary hearing where the petitioner did not specify evidence he would present); *Eden v. Ryan*, No. CV-15-8020-PCT-DGC (JFM), 2016 WL 1010698 at *35 (D. Ariz. Jan. 12, 2016) ("Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing."). The Court finds that an evidentiary hearing on Ground 3A is unwarranted. The Court need not reach the question whether an evidentiary hearing would be precluded by 28 U.S.C. § 2254(e)(2). The Court will deny habeas corpus relief on Ground 3A.

Applying the standard of review mandated by 28 U.S.C. § 2254(d), the Court will deny habeas corpus relief on Ground 3A.

**2.    Ground 3B**

In Ground 3B, Devlin claims that his trial counsel was ineffective for failing to negotiate to obtain from the prosecution a better plea bargain offer than the one that the prosecution extended to him. (ECF No. 26 at 14–15.) Devlin explains his claim as follows:

> Devlin was only offered a single deal by the State: 18–56 years. [Footnote, citing Devlin's state habeas petition, ECF No. 32-44 at 37, omitted.] This unfavorable offer, which was far worse than the 12–56-year sentence Devlin received after trial, [Footnote omitted] was the only one offered because Devlin's trial counsel failed to negotiate with the State. In contrast, upon belief, prosecutors offered his co-defendant Burks a deal for just 12–30 years. [Footnote, citing Devlin's state habeas petition, ECF No. 32-44 at 38, omitted.] Upon belief, prosecutors subsequently offered [Burks] an even better deal of just 10-25 years. [Footnote, citing Devlin's state habeas petition, ECF No. 32-44 at 38, omitted.] Burks, however, did not accept any plea offer.

(*Id.*) Devlin claims that, if his counsel had been effective, he would have received a plea bargain offer as good or better than those offered Burks, and he would have accepted it. (*Id.*)

Devlin asserted this claim in his state habeas petition. (ECF No. 32-44 at 37–38), and the Nevada Court of Appeals affirmed the state district court's denial of relief on the claim, ruling as follows:

> … Devlin claimed his trial counsel was ineffective for failing to participate in pretrial negotiations with the State. Devlin acknowledged that he received a plea offer from the State but asserts counsel should have engaged in additional negotiations in an attempt to receive additional plea offers. Devlin did not provide specific facts to support this claim or allege that there was a reasonable probability counsel could have obtained a plea offer from the State that he would have accepted absent counsel's alleged deficiency, the State would not have withdrawn its plea offer in light of intervening circumstances, or the district court would have accepted such an offer. *Cf. Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) (requiring a showing of "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time"). Accordingly, Devlin did not demonstrate a reasonable probability of a different outcome had counsel engaged in additional plea negotiations with the State. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 33-10 at 6.)

The Nevada Court of Appeals' ruling was reasonable. Devlin did not proffer any evidence in his state habeas action—and he proffers no such evidence in this federal habeas action—to show that the prosecution would have offered him a better plea deal if his trial counsel had done something different. The Nevada Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence presented.

Devlin requests an evidentiary hearing with respect to this claim (ECF No. 53), but there is no showing warranting an evidentiary hearing. Here again, Devlin states "this court may find it necessary to hear from Devlin's counsel to determine whether they had a strategic basis for their conduct." (ECF No. 53 at 5.) Devlin also states:

> In Ground 3(B), Devlin argues trial counsel was ineffective for failing to pursue a more favorable plea bargain. Devlin seeks an evidentiary hearing to hear from the prosecutor on whether a plea offer could have been reached when Devlin was far less culpable than his codefendant, who had a criminal record, unlike Devlin, and who admitted he was the actual shooter.

(*Id.*) But Devlin does not provide any indication what testimony his trial counsel or the prosecutor would provide to support his claim. Any suggestion that testimony of trial counsel or the prosecutor would support this claim is speculation. Without a proffer of the evidence he would offer, Devlin does not show that an evidentiary hearing is warranted.

Applying the standard of review mandated by 28 U.S.C. § 2254(d), the Court will deny habeas corpus relief on Ground 3B.

**E.    Grounds 3C, 3D, and 3E**

Grounds 3C, 3D, and 3E are also claims of ineffective assistance of counsel; however, Devlin did not assert these three claims in state court. In the order resolving Respondents' motion to dismiss, the Court ruled that these claims are

technically exhausted in state court but subject to application of the procedural default doctrine, and the Court deferred the question whether Devlin can overcome the procedural default by showing cause and prejudice under *Martinez* until after the parties briefed the merits of the claims. (ECF No. 41 at 11; *see also* Part III.B., *supra*.)

Under *Martinez*, a federal habeas petitioner can demonstrate cause to potentially overcome the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during the state post-conviction proceedings or (b) such counsel was ineffective. *Martinez*, 566 U.S. at 14. Devlin did not have counsel for his state habeas action, so there is no question regarding "cause." (*See* ECF No. 47 at 29 (Respondents conceding that "[b]ecause Devlin was not represented by counsel during his initial state post-conviction petition he has established cause, and he need only show prejudice in order to overcome the state procedural default.").)

To demonstrate "prejudice" under *Martinez*, the petitioner must show that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim. *Martinez*, 566 U.S. at 14. A claim is "substantial" for purposes of *Martinez* if it has "some merit," which refers to a claim that would warrant issuance of a certificate of appealability. *Leeds v. Russell*, 75 F.4th 1009, 1018 (9th Cir. 2023). To meet this standard, the petitioner must show that reasonable jurists could debate the issue. *Id.* (citing *Apelt v. Ryan*, 878 F.3d 800, 828 (9th Cir. 2017)); *see also Miller-El v. Cockrell,* 537 US. 322, 336–38 (2003).

### 1.    Ground 3C

In Ground 3C, Devlin claims that his trial counsel elicited unfavorable testimony during the cross examination of Willy Gomez. (ECF No. 26 at 16–18.) Specifically, Devlin explains his claim as follows:

> Devlin's trial counsel was ineffective during the cross examination of Willy Gomez by eliciting testimony from Gomez in which he accused Devlin of being the instigator of the argument that

eventually led to the violence. It's undisputed the confrontation started with Gomez, who was separated from the rest of his group, before Gomez's friends later intervened on his behalf. [Footnote citing prosecution opening statement, ECF No. 31-35 at 32.] During the prosecution's direct examination, Gomez did not specifically identify whether Devlin or Burks instigated the confrontation; instead, he jointly blamed both: "That's where—that's where it got crazy because they—they just started—they went—basically they went crazy on me." [Footnote citing Gomez's testimony, ECF No. 31-36 at 188.]

During cross examination, however, Devlin's trial counsel elicited testimony from Gomez suggesting Devlin instigated the confrontation:

> Q.   Okay. Do you remember who you had words with first as you were at the white car?
>
> A.   The way I look at it is this. It doesn't—
>
> Q.   No. No. No, sir.
>
> A.   Huh?
>
> Q.   Sir, it's not the way you look at it. You either remember or you don't. Do you remember as you sit here today who you had words with first when you got—
>
> A.   Him. Him right there.
>
> Q.   Which one? So the dark-skinned or the light-skinned one?
>
> A.   The light-skinned dude [Devlin].

[Footnote citing cross-examination of Gomez, ECF No. 31-36 at 224–25.]

There was no strategic reason for Devlin's trial counsel to cross examine Gomez on this topic. The State's strategy relied on blaming Devlin for starting the confrontation with Gomez. During opening statements, the prosecutor stated, "There was some sort of exchange of words between defendant Pierre Devlin and Willy Gomez, and initially most of the group was completely unaware that this was going on." [Footnote citing prosecution opening statement, ECF No. 31-35 at 32.] The prosecution's direct examination of Gomez, however, failed to elicit testimony specifically blaming Devlin for instigating the confrontation.

Rather than capitalize on the prosecution's misstep, Devlin's trial counsel assisted the State's case. Trial counsel not only asked Gomez to identify who instigated the argument, trial counsel pushed Gomez when Gomez equivocated. Because the State's case relied on Devlin instigating the confrontation, there was no strategic reason for Devlin's trial counsel to insist Gomez identify either Burks or Gomez as the instigator.

What's more, trial counsel knew his client would testify he was on his phone and wasn't paying attention when Gomez and Burks started arguing with each other. [Footnote citing testimony of Devlin, ECF No. 31-38 at 155.] If trial counsel didn't insist Gomez identify the instigator, Devlin could have controlled the narrative with his undisputed testimony. Thus, by asking Gomez to specify who started the argument, Devlin's trial counsel unreasonably risked eliciting an unfavorable response, which is exactly what happened.

Trial counsel's deficient performance prejudiced Devlin by undermining Devlin's credibility. After the jury heard Gomez specifically blaming Devlin for instigating the confrontation, Devlin was less credible when he testified he wasn't present when the argument started between Burks and Gomez. And if Devlin was less credible when testifying about how the confrontation started, then the jury would be more willing to discredit Devlin's testimony on the more important details, such as whether he conspired with Burks to shoot the victims.

(ECF No. 26 at 16–17.)

In his statement of his claim, however, Devlin does not quote all the relevant direct testimony of Gomez. Devlin testified as follows on direct examination:

Q. When you left the Gold Spike, did you all leave together?

A. No. I went outside. I think they were doing something, and I went outside, and then I seen a white car.

Q. Okay. You said that you went outside before them.

A. Yeah.

Q. Did you all of eventually end up together—

A. Oh, yeah, of course.

Q. —walking back to the car?

A. Yeah. Yeah. I was just—I was just, you know. Yeah. Yeah.

Q. And when you were walking back to the car, is that when you saw the white car?

A. Yes.

Q. Parked on the street?

A. Yes.

18

Q.    When you saw the white car parked on the street, were there individuals next to that white car or near the car?

A.    There was one outside, I think one in the driver side, and I remember telling them, Hey, bro, nice car because I thought it was nice. It was a Lexus. I was like, You got a nice car, bro.

Q.    And when you told—when you told that to one of the men, which one are you speaking to, the one in the car on the driver side or the one outside of the car?

A.    Both of them.

Q.    What happened after you told them that?

A.    I have no idea. That's where—that's where it got crazy because they—they just started—they went—basically they went crazy on me. They just started going saying crazy. I was, like, like in my mind, I couldn't believe it. You know what I'm saying because I just gave you a compliment, and you—they just went off base. I just couldn't believe it because I'm thinking in my mind I just want to go home and sleep.

Q.    Okay. When you say—

A.    So I kept walking, but they just kept talking.

Q.    When you say that they went crazy, were they happy? Were they mad? I mean, what do you mean when you say they went crazy? Were they yelling at you? What were they doing?

A.    Okay. If I give you a compliment, you know, me, if somebody tells me, hey, you have a nice car, I'm going to say thank you. They started saying stuff like you—

Q.    Don't—don't tell me anything specifically that was said, please. Just tell me whether they were upset with you—

A.    Upset.

Q.    —or whether they were happy, okay.

A.    Upset.

Q.    And you could tell that by the things that they were saying to you?

A.    Yes.

Q.    What about their tones of voice?

A.    Yes.

1    Q.    You could tell that by the tones of their voices as
well?

2    A.    Yeah. I could tell by the way they were speaking that it
was time for me to go.

3

4  (ECF No. 31-36 at 187–88.) Moments later, still under direct examination, Gomez

5  testified:

6    Q    As you were walking away, did something happen?

7    A.    Yes. The guy—the guy that was driving, the light-
[skinned] dude, for some reason goes to his car and grabs the gun
8  and shoots it in the ground.

9    Q.    Did you see him go to the car and grab the gun?

10    A.    Yes. Because I was looking. You know, we were walking
away, and I'm, like, this dude, really, you guys really going to grab
11  the gun and just pow. I'm like—we told them Hey, bro, we don't want
to have problems. So we walked away.
12

13    Q.    When he went and got the gun and fired it at the ground,
did he fire it at the ground in the direction of you all?

14    A.    Yes.

15    Q.    Do you see the light-skinned guy in the courtroom
today?
16

17    A.    Yes.

18    Q.    Could you please point to him and identify an article
of clothing that he's wearing.

19    MR. WHIPPLE [defense counsel]:  Your Honor, I'll stipulate to
the identification.
20

21    THE COURT:    All right.

22    THE WITNESS:    Right there.

23    THE COURT:    The record will reflect identification.

24    MS. MERCER [prosecutor]:    Of Defendant Devlin.

25    THE WITNESS:    He has long—yeah, he has long hair. He had
short hair I believe. So that's him right there. *He's the one that started*
26  *everything.*

27    BY MS. MERCER:

28    Q.    Okay. And you're pointing to the gentleman in the
blue suit jacket on the—

1      A.    Yes.

2      Q.    —on your left?

> A.    Yes, he's the one. *Everything, all this started because of him*, and I would love to know why.

(ECF No. 31-36 at 190–91 (emphasis added).) And a bit further on in his direct examination, Gomez testified:

> Q.    Okay. So let me back up a little bit. *You indicated that you complimented the defendant Pierre Devlin on his white Lexus*?
>
> A.    *Yeah.* I thought it was nice.
>
> Q.    Was it that same white Lexus that drove by when shots were fired again?
>
> A.    Yes.

(ECF No. 31-36 at 192 (emphasis added).)

Devlin's claim is based on a mischaracterization of Gomez's testimony on direct examination. The record is plain: on direct examination, Gomez pointed to Devlin as the person "who started everything," and he testified that "all this started because of him." In other words, on direct examination, Gomez did in fact testify—adamantly—that Devlin was the instigator. Given that testimony of Gomez on direct examination, there is no reasonable argument that Devlin's counsel's cross-examination of Gomez further inculpated Devlin or that it added to any appearance that Devlin's testimony, that he was on his phone and was not paying attention when the confrontation started, was untruthful. Hence, there is no reasonable probability that, but for Devlin's counsel's cross-examination of Gomez, the result of the trial would have been different. *See Strickland*, 466 U.S. at 688, 694. Ground 3C is without merit.

It is not clear from Devin's motion for evidentiary hearing whether he requests an evidentiary hearing on this claim. In his motion, Devlin requests an evidentiary hearing "on Grounds 3 and 4 of his second amended petition." (ECF No. 53 at 2; *see also id.* at 3, 5), but he makes no specific mention of Ground 3C.

21

However, after Respondents discussed Grounds 3C, 3D, and 3E, in their opposition to the motion for evidentiary hearing (ECF No. 59 at 12–13), Devlin argued in his reply that 28 U.S.C. § 2254(e)(2) would not bar the Court from holding an evidentiary hearing on those grounds. (ECF No. 60 at 3.) Regardless, though, Devlin does not give any indication what testimony his trial counsel or any other witness would provide that could possibly have any bearing on the questions of prejudice under *Strickland* and *Martinez*, which are the determinative issues with respect to this claim. Devlin does not show that an evidentiary hearing is warranted. The Court will deny the motion for evidentiary hearing with respect to Ground 3C.

Ground 3C is without merit and is not a "substantial claim" within the meaning of *Martinez*. Ground 3C will be denied as procedurally defaulted.

### 2.    Ground 3D

In Ground 3D, Devlin claims that his trial counsel was ineffective for failing to request severance and mistrial after Burks's closing arguments. (ECF No. 26 at 18–19.) Devlin points out that, before trial, he filed a motion to sever his trial from Burks's trial, and the court denied that motion. (ECF No. 31-9; ECF No. 31-1 at 16–17; ECF No. 31-15.) He also points out that, some seven months later, on the second day of trial, during a break between jury selection and opening statements, there was discussion among the judge and counsel for both defendants about whether the prosecution would offer a statement of Burks into evidence (ECF No. 31-35 at 13–20), and during that discussion Burks's counsel stated: "[W]e are not intending to lay out a theory wherein we're saying Mr. Devlin did anything. We are just pointing out the things that the State does not have against Mr. Burks." (ECF No. 31-35 at 17.) Devlin goes on to point out that, in closing argument, Burks's counsel argued that the evidence showed, contrary to Devlin's testimony, that Devlin, not Burks, fired the shots from the car. (ECF No.

31-40 at 87–90.) Devlin faults his trial counsel for not objecting during that closing argument, and for not requesting severance and a mistrial.

What Devlin does not mention in his claim, though, is that he presented his closing argument before Burks, and in his closing argument Devlin's counsel went to great lengths to incriminate Burks. (ECF No. 31-40 at 72–83.) Devlin's counsel argued that it was Burks who fired the shots from the car, and that Devlin did not know Burks was going to do so. (*Id.*) It was then, after Devlin's closing argument, that Burks's counsel essentially responded by doing the same thing, that is, arguing that it was Devlin who did the shooting from the car.

After his motion to sever had long before been denied, and after he argued that it was Burks who shot at the victims from the car, Devlin's counsel did not perform unreasonably in refraining from objecting to Burks's closing argument and not moving for severance and a mistrial.

Moreover, even putting aside the performance part of the *Strickland* analysis, and focusing on the prejudice part, it is beyond any reasonable argument that Devlin was not prejudiced. The question who fired the gun from the car was a red herring. The jury's verdict did not depend upon a finding that Devlin fired the shots from the car. (*See* ECF No. 31-40 at 40–67 (prosecution's closing argument generally); *id.* at 42, 53–54 (prosecution told jury the evidence showed that Burks fired the shots from the car); *id.* at 52–62 (prosecution argued that, under theories of aiding and abetting, and conspiracy, Devlin and Burks were both responsible for every crime committed by either); *see also* ECF No. 31-42 at 27–29 (jury instructions on aiding and abetting, and conspiracy).)

Furthermore, the Nevada Supreme Court's ruling on Devlin's direct appeal is a good indicator of how the state courts would have handled any objection by Devlin to Burks's closing argument or any motion by Devlin for severance or a mistrial. On his direct appeal, Devlin argued that the trial court abused its discretion in denying his motion to sever. (ECF No. 32-32 at 15–22.) As part of

1   that claim, Devlin emphasized—much as he does in Ground 3D—that Burks's

2   counsel argued in closing argument that Devlin was the shooter despite saying

3   during a hearing on the second day of trial that he would do nothing to inculpate

4   Devlin. (*Id.* at 18–22.) The Nevada Supreme Court ruled as follows:

> … Devlin argues that the district court abused its discretion in
> denying his motion to sever his trial from that of his codefendant
> because they presented mutually antagonistic defenses. Assuming
> without deciding that Devlin and his codefendant presented
> mutually antagonistic defenses, any potential misjoinder does not
> warrant reversal because it had no substantial or injurious effect on
> the verdict—multiple eyewitnesses' testimony and video surveillance
> evidence supported the jury's verdict. [Footnote: Devlin's argument
> that the district court's refusal to sever prevented him from
> presenting evidence in support of his defense also fails. The evidence
> Devlin complains of—that his codefendant admitted to firing the
> gun—was presented to the jury through another witness.] *See
> Chartier v. State*, 124 Nev. 760, 764–65, 191 P.3d 1182, 1185 (2008)
> ("[M]isjoinder requires reversal only if it has a substantial and
> injurious effect on the verdict."); *Marshall v. State*, 118 Nev. 642,
> 645–46, 56 P.3d 376, 378 (2002) (discussing mutually antagonistic
> defenses). For this same reason, Devlin's argument that his
> codefendant's counsel impermissibly implicated Devlin as the
> shooter in his closing argument does not warrant reversal.

15   (ECF No. 32-40 at 2–3.) Thus, the Nevada Supreme Court explicitly ruled that the

16   joinder had no substantial or injurious effect on the verdict. That ruling weighs

17   heavily against finding of prejudice for purposes of the *Strickland* analysis, as it

18   indicates that the results for Devlin in state court would not have been different

19   if his counsel did what Devlin now claims he should have done. Devlin makes no

20   showing of a reasonable probability that, had counsel objected to Burks's closing

21   argument or moved for severance and a mistrial, the result of the trial would have

22   been different. *See Strickland*, 466 U.S. at 688, 694.

23       Here again, it is not clear whether Devlin requests an evidentiary hearing

24   on this claim. But, regardless, Devlin does not say what testimony his trial

25   counsel or any other witness would provide to support this claim, especially

26   regarding the questions of prejudice under *Strickland* and *Martinez*. Devlin does

27   not show that an evidentiary hearing is warranted. The Court will deny the motion

28   for evidentiary hearing with respect to Ground 3D.

Because it is without merit, and not a "substantial claim" within the meaning of *Martinez*, Ground 3D will be denied as procedurally defaulted.

### 3.    Ground 3E

In Ground 3E, Devlin claims that his trial counsel failed to prepare for Devlin's testimony. (ECF No. 26 at 19–22.) Specifically, Devlin claims:

> Most egregiously counsel failed to elicit testimony regarding Devlin's conduct after the shooting. During direct examination, trial counsel stopped with the timeline of events once Devlin testified to dropping off Burks after the shooting. [Footnote citing ECF No. 31-38 at 163.] The prosecution's cross examination, however, focused on Devlin's conduct after the shooting to suggest he fled. [Footnote citing ECF No. 31-38 at 199–202.] In particular, the prosecutor elicited testimony from Devlin that Devlin saw the incident on the news before turning himself in. [Footnote citing ECF No. 31-38 at 199.] During closing arguments, the State used Devlin's failure to immediately call the police or turn himself in as evidence of Devlin's guilt. [Footnote citing ECF No. 31-40 at 62.] The jury instructions specified flight as circumstantial evidence of guilt. [Footnote citing ECF No. 31-42 at 47 (Jury Instruction No. 33).] Trial counsel thus should have known the State would discuss Devlin's conduct after the shooting, and his failure to elicit testimony on the topic may have caused the jury to believe Devlin was less than forthcoming. Any reasonable attorney would have been prepared to elicit this crucial testimony in anticipation of the State's arguments.

> The prosecutor also elicited testimony from Devlin that he didn't know what happened to the gun magazine after the shooting. [Footnote citing ECF No. 31-38 at 203.] During closing arguments, the State used the lost magazine against Devlin: "You also know that there was a magazine in it when Steven Burks fired it out that window, but two days later when Metro gets it out of the trunk of that car there's no magazine in it." [Footnote citing ECF No. 31-38 at 63.] Trial counsel's failure to elicit testimony from Devlin on the lost magazine could have appeared to the jury that Devlin was hiding this fact.

> Moreover, the prosecution pounced on Devlin's drinking. Early during cross examination, the prosecutor elicited testimony that Devlin called in sick from work on the morning of the shooting, even though Devlin was admittedly not sick. [Footnote citing ECF No. 31-38 at 174–75.] Then, the prosecutor elicited testimony that Devlin had one to ten drinks before the shooting. [Footnote citing ECF No. 31-38 at 175–76.] Devlin's drinking and his failure to specify how much he drank made him less credible before the jury. Counsel should have been prepared for this.

> Exacerbating the problems above, trial counsel failed to use his redirect examination to rehabilitate Devlin's credibility after cross examination. Trial counsel's redirect was short: just two pages of the transcript. [Footnote citing ECF No. 31-38 at 230–32.] And trial

1

2

counsel's questions didn't address any of the abovementioned issues. As a result, trial counsel failed to allow Devlin to properly explain himself to the jury.

3

4

5

6

7

Finally, trial counsel heavily relied on the video during his direct examination of Devlin [footnote citing ECF No. 31-38 at 150, 154, 158, 159, 160, 162, 263, 164 (references to the video)], but Devlin testified he was not familiar with the video. [Footnote citing ECF No. 31-38 at 196.] Some aspects of Devlin's testimony regarding the verbal confrontation with the other group were not corroborated by the surveillance video. Trial counsel failed to review the surveillance evidence frame by frame with Devlin in anticipation [of] his testimony, and as a result, Devlin lost credibility when his memory of that morning didn't exactly match the surveillance video.

8

(ECF No. 26 at 20–22.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

There is a glaring omission from Devlin's claim, however. He does not indicate—by declaration, for example—how Devlin would have testified differently if better prepared. Devlin claims that, because his counsel's preparation of him to testify was inadequate, his counsel did not elicit testimony from him, in either his direct or re-direct testimony, about his conduct after the shooting, about the missing gun magazine, and about his drinking before the shooting. (*Id.*) Also, Devlin claims that his counsel did not adequately review the video evidence with him, and as a result "[s]ome aspects of Devlin's testimony regarding the verbal confrontation with the other group were not corroborated by the surveillance video." (*Id.*) But Devlin gives no indication how he would have testified had his counsel better prepared him. Therefore, even assuming, for purposes of this analysis, that Devlin's trial counsel performed unreasonably, Devlin makes no showing that he was prejudiced, that is, no showing of a reasonable probability that, had counsel better prepared him for his testimony, the result of the trial would have been different. *See Strickland*, 466 U.S. at 688, 694.

24

25

26

27

28

Here too, it is not clear whether Devlin requests an evidentiary hearing on this claim. But regardless, Devlin does not say what testimony he would provide that could support this claim; in fact, nowhere in his motion for evidentiary hearing does Devlin request an opportunity to testify about this or any other matter. Nor does Devlin say what testimony his attorney or any other witness

would provide to substantiate this claim. Devlin does not show that an evidentiary hearing is warranted. The Court will deny the motion for evidentiary hearing with respect to Ground 3E.

Ground 3E is not a "substantial claim" within the meaning of *Martinez*, and it will be denied as procedurally defaulted.

### F.    Ground 4

In Ground 4, Devlin claims that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. (ECF No. 26 at 22–24.) More specifically, Devlin argues that there was insufficient evidence that he aided and abetted Burks, or that he conspired with him, and he claims his appellate counsel was ineffective for not making that argument on his direct appeal. (*Id.*)

Devlin raised this claim in his state habeas action. (ECF No. 32-44 at 10–15; ECF No. 33-8 at 6–7.) The Nevada Court of Appeals ruled on the claim as follows:

> … Devlin claimed his appellate counsel was ineffective for failing to argue that the State did not present sufficient evidence to prove his guilt. Devlin asserted that the evidence was insufficient to convict him under a direct, aiding-or-abetting, or conspiracy theory of criminal liability because there was no evidence presented that he wished for his codefendant to shoot at the victims. Evidence is sufficient when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979).
>
> The evidence produced at trial revealed Devlin engaged in a verbal confrontation with a group of people. Following the verbal confrontation, Devlin retrieved a firearm from his vehicle and fired a shot into the ground within view of the group. Devlin and his codefendant got into Devlin's vehicle and Devlin drove toward the group while his codefendant shot at them. Several members of the group were struck by bullets and injured.
>
> Given the evidence and testimony, any rational juror could have found beyond a reasonable doubt that Devlin committed assault with the use of a deadly weapon, battery with the use of a deadly weapon causing substantial bodily harm, and discharge of a firearm from or within a structure or vehicle, *see* NRS 200.471(1)(a), 2(b); NRS 200.481(1)(a), 2(e)(2), NRS 202.287(1), and did so under direct, aiding-or-abetting, and/or conspiracy theories of liability, *see*

NRS 195.020 (defining criminal liability as a principal and as an aider or abettor); *Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996) (stating "[a] conspiracy is an agreement between two or more persons for an unlawful purpose" and "a conspiracy conviction may be supported by a coordinated series of acts, in furtherance of the underlying offense, sufficient to infer the existence of an agreement") (internal quotation marks omitted), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on direct appeal where substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981). Because there was sufficient evidence produced at trial to support the jury's finding of guilt, Devlin did not demonstrate that counsel's failure to raise the underlying claim on appeal fell below an objective standard of reasonableness or a reasonable likelihood of success on appeal had counsel done so. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 33-10 at 10–12 (emphasis in original).)

Because this claim was adjudicated on its merits in state court, 28 U.S.C. § 2254(d) forecloses federal habeas corpus relief unless the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Pinholster*, 563 U.S. at 181; *see also* Part III.A., *supra*.

The Nevada Court of Appeals reasonably applied *Strickland*. Devlin's appellate counsel did not perform unreasonably in not arguing that the evidence was insufficient to support Devlin's convictions, and Devlin was not prejudiced by his not doing so. This claim is wholly without merit.

All of Devlin's arguments in support of this claim go to the weight of evidence, not to any lack of evidence. When reviewing a challenge to the sufficiency of evidence, an appellate court reviews the evidence in the light most favorable to the prosecution and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). It is for the jury, not the appellate court, to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences

from the evidence. *Jackson*, 443 U.S. at 319; *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975).

Devlin argues that the Nevada Court of Appeals erred in citing evidence that Devlin engaged in a verbal confrontation with the victims, because "whether Devlin started the verbal confrontation is in dispute." (ECF No. 26 at 23.) But— like Devlin's argument in support of Ground 3C (*see* Part III.E.1., *supra*)—this argument is based on a mischaracterization of Willy Gomez's testimony. Gomez testified under direct examination that Devlin "started everything," and that "all this started because of him." (ECF No. 31-36 at 191.) A rational juror could have seen that as circumstantial evidence that Devlin conspired with Burks, or aided and abetted Burks, when Burks fired the shots from the car.

As for the shot Devlin fired into the ground, Devlin argues:

> If he wanted to shoot at Gomez and his friends, Devlin could have fired at them before retreating to his car. The fact that Devlin fired a warning shot is actually evidence against conspiracy because firing a warning shot showed Devlin could control himself and not escalate the situation by firing at people.

(ECF No. 26 at 23.) That though is not a compelling argument that there was no evidence to support the verdict. A rational juror could have found that Devlin going to his car and getting the gun, and shooting it into the ground before the victims, was an escalation of the conflict, that it constituted a threat of harm, and that it was circumstantial evidence that Devlin conspired with Burks, or aided and abetted him, when Burks shot at the victims.

Similarly, Devlin argues about the significance of the evidence that he "hit the breaks" at some point when he was driving by the victims and Burks shot at them out the window. (ECF No. 26 at 23–24.) This too is argument for the jury. The evidence that Devlin applied the brakes of the car could have been seen by a rational juror as circumstantial evidence of aiding and abetting, or conspiracy.

And the same goes for Devlin's argument about the significance of evidence that he fled the scene. (ECF No. 26 at 24.) That too was for the jury; a rational

juror could have seen Devlin's actions after the shooting as evidence that there was a conspiracy between Devlin and Burks, or that Devlin aided and abetted Burks.

The Court finds this claim of ineffective assistance of appellate counsel to be wholly without merit, and the Nevada Court of Appeals' ruling on it to be reasonable.

Devlin requests an evidentiary hearing on Ground 4 (ECF No. 53), but, again, he does not provide any indication what testimony of his appellate counsel or any other witness he would present to support the claim. Devlin does not show that an evidentiary hearing is warranted. The Court will deny the motion for evidentiary hearing with respect to Ground 4.

Applying the standard of review mandated by 28 U.S.C. § 2254(d), the Court will deny Devlin habeas corpus relief on Ground 4.

## G.    Certificate of Appealability

For a certificate of appealability ("COA") to issue, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Where the district court denies a habeas claim on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying these standards, a certificate of appealability is unwarranted in this case.

1    **IV.    CONCLUSION**

2          It is therefore ordered that Petitioner's Motion for Evidentiary Hearing

3    (ECF No. 53) is denied.

4          It is further ordered that Petitioner's Second Amended Petition for Writ of

5    Habeas Corpus (ECF No. 26) is denied.

6          It is further ordered that Petitioner is denied a certificate of appealability.

7          It is further ordered that the Clerk of the Court is kindly requested to enter

8    judgment accordingly and close this case.

9          DATED THIS 28th day of February, 2025.

10

11

12    ANNE R. TRAUM
      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28